## DANIELS *v.* CHESHIRE RAILROAD COMPANY.

A deed bounded land, beginning at a point upon the east bank of Connecticut river, and running by certain known monuments till it reached the bank again ; thence along said bank to the bound begun at ; meaning to convey all between the east line and the river.—*Held*, that the bank at ordinary water-mark was the boundary.

A contract to pay for all the land conveyed "lying on both sides of Cold river," at $100 per acre, does not bind the party to pay for the land of the river, though that passes by the deed.

ASSUMPSIT, upon a written contract, dated May 7, 1847.

The plaintiff, by his deed of that date, had conveyed to the defendants a tract of land, in Walpole, bounded as follows : "Beginning at a point on the easterly bank of Connecticut river, on the northerly line of land late of Albert Carpenter, and now of the Cheshire Railroad Company, and running easterly on said line to a point forty feet distant at a right angle from a line recently staked out as the central line of the easterly track of the Cheshire Railroad ; thence running northerly on a line parallel with said central line, to land of George and Oliver Huntington ; thence on their southerly line westerly to the easterly bank of said river ; thence southerly on the bank of said river to the place of beginning ; meaning to convey to said company all the land lying between the easterly line aforesaid and Connecticut river, and between the Carpenter land on the south and the Huntington land on the north, relinquishing all right of passways over or under said road, except by the highway."

By the written contract, the defendants, reciting the conveyance by this deed, "promise and agree with said Daniels that they will have said land, lying on both sides of Cold river, accurately measured, and will pay him therefor at the rate of one hundred dollars per acre, except so much thereof as is highway."

The plaintiff at the trial introduced evidence to show the quantity of land lying between the railroad and the

water's edge of Connecticut river, at about the medium height of the water in the month of July, including the bed of Cold river, and excluding the highway.

On cross-examination the witness testified that at one time, at the plaintiff's request, he measured all the land between the railroad and the bank of the Connecticut, including the bed of Cold river, and excluding the highway; and that in measuring to the bank he went in all places as far as to the top of the bank, and in some instances beyond the top towards the water, wherever he thought that the land could be cultivated.

The defendants introduced evidence to show the amount of land between the railroad and the bank of the Connecticut, excluding the bed of Cold river as well as the highway. It appeared that the surveyor had adopted the same rule followed by the surveyor introduced by the plaintiff, in measuring to the bank of the Connecticut. There was no evidence that plaintiff had requested the defendants to measure the land, or to pay the money, before bringing the action.

The plaintiff's counsel requested the court to instruct the jury whether the western boundary of the land, to be measured and paid for by the defendants, extended to the top, middle or bottom of the east bank of the Connecticut river. But the court declined to accede to the request, and charged, that in estimating the quantity of land they were to go to the bank of the Connecticut river, and not to the thread of the stream nor to the water's edge; but might proceed as far from the top of the bank toward the water as the surveyors had measured, it appearing that the land which they had measured was capable of cultivation; and that they should exclude the bed of Cold river; and after fixing upon the amount to be paid, upon this computation, they should cast interest from the date of the writ. The jury returned a verdict for the plaintiff, which he, for errors in the charge, moved to set aside.

*Walker*, for the plaintiff.

Cold river passes through the land conveyed. Was it to be excluded in measuring the land for the purpose of setting the price to be paid under the contract? The grant included so much of the river as was embraced by the bounds. To exclude the river from the grant, an express intention to do so must exist. The company agree to have " said land" measured, and to pay the plaintiff for it at a certain rate per acre. " Said" has a meaning not liable to be misunderstood. The words, " lying on both sides of Cold river," are words of description and not of limitation. If the parties had intended to exclude the river they would have so expressed it. By the words, " except so much as is highway," they show how much they intended to except. 3 Greenl. 474; *State* v. *Gilman-ton,* 9 N. H. 461; *Lunt* v. *Holland,* 14 Mass. 149.

As to the rule of measurement upon Connecticut river. The measurement must be coextensive with the grant. If a grant be bounded on, to, up to a river, it goes to the *filum,* unless the stream be navigable.· 2 N. H. 271; 3 N. H. 324; 9 N. H. 463; 11 N. H. 553; 2 Conn. 483; 13 Wend. 370; 3 Kent 433. The presumption is that the land extends to the *filum,* unless there be something to show a contrary intent, and there is nothing here. All the land to the river is conveyed. I am aware of the case in 17 Mass. 288, which seems to be approved in *Rix* v. *Johnson,* 5 N. H. 520. The word " bank" or " shore" is the same as to the river. 20 Wend. 149; 7 Wend. 615; 3 Kent 429; 13 Conn. 27. The meaning is made clear in this case by using the words, " meaning to convey to the river." Although the word " bank" is used here, there are general words to control it. They should measure to the thread. There is no pretence for stopping short of low water mark. *Child* v. *Starr,* 4 Hill 375. Even if we call the bank the boundary, we go to low water mark. The grant cannot be limited by the nature of the soil. Suppose the top of the bank barren and the bottom fertile, where would the bound be ?

*Wheeler*, for the defendant.

We admit that we claim by the deed the bed of Cold river; but the contract was to settle the rate of compensation, and must be distinguished from the deed.

By the writing, the land on both sides of Cold river was to be measured. Why did it differ from the deed, unless for the purpose of excluding the bed of the river?

As to the boundary on Connecticut river. Riparian proprietors upon navigable streams own only to the top of the bank. 5 Pick. 492; 1 Penn. 462; 3 Kent. The English rule concerning the ebb and flow of the tide does not apply here, because there are other tests. The larger rivers are navigable above tide water. Here riparian proprietors take only to high water mark. 3 N. H. 321.

The charge was correct as to interest. There was no request to measure the land, and no demand of payment. 12 N. H. 474.

*Walker*, in reply.

The word " said" is a new description of the land. All the land from the railroad to the river is conveyed, and not to the top of the river bank.

WILCOX, J. The deed of the plaintiff has the effect of conveying to the defendant all the land included within the boundaries which it describes, whether that land is covered by water or not. The western boundary being the bank of Connecticut river, the land which that water covers at its ordinary height is not comprised in the grant, which extends to the water, and no farther. *Rix* v. *Johnson*, 5 N. H. 520 ; 3 Kent 434.

The written contract, of which the construction is brought in question in this case, required the defendants to cause to be measured all the land conveyed, " lying on both sides of Cold river," and to pay the plaintiff a sum to be ascertained by the result of that measurement.

" Land" is a word to which the law assigns a technical

Daniels *v.* Cheshire Railroad Company.

meaning; and that is the comprehensive one already referred to, which does not discriminate between that which is and that which is not covered with water.  And ordinarily a grant of land upon both sides of an inland stream not navigable, would extend on each side to the thread, and comprehend of course the whole bed of the river.

But in cases in which it is apparent that parties do not intend to use, in a technical or legal sense, a word which has one, and in which the settled rules of legal construction do not require such a meaning to be attached to it, the court will inquire what meaning the parties attached to the word.  And this inquiry may ordinarily be satisfied by referring to the position and circumstances in which the parties stood, when they made use of the word in question.  *De Longuemere* v. *N. Y. Fire-Ins. Co.*, 10 Johns. 120.

The deed having conveyed all the land within certain limits, the defendants agreed to measure, not the land conveyed, without restriction, but the land upon both sides of Cold river.  We think it apparent that they intended the same as if they had said, those parts of the land conveyed which lie upon each side of that part of it over which Cold river flows.  This was what the defendants undertook to be caused to be measured, and not the "said land," without qualification or reservation.  The instruction given to the jury was, therefore, in this particular correct.

In limiting the land subjected to be measured, to include only such parts of the land conveyed as were fit for cultivation, we think the court erred.  All the land conveyed lying upon either side of Cold river, which we have seen extended to the Connecticut river, was, by the terms of the contract, to be measured.  No other restriction, except that which is implied by its location upon the sides of Cold river, is to be found in the provisions of the contract subjecting "said land" to be measured.

For this reason the verdict must be set aside and a

*New trial granted.*